```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

JOE N.,

           Plaintiff,

       v.                                                    **DECISION AND ORDER**
                                                                   19-CV-1384S

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

_____

      1.      Plaintiff Joe N.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for disability insurance benefits under Title II of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff filed his application for benefits on February 23, 2016. (R.[2] at 89.) Plaintiff alleged disability beginning on March 1, 2015, due to a back injury, lumbar fusion, and diabetes. (R. at 79-80.) Plaintiff's application was denied. Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ"). ALJ Mary Mattimore held a hearing on September 17, 2018, at which Plaintiff, represented by his attorney, appeared and testified. (R. at 34-78.) Vocational Expert Lanell Hall also appeared and testified by telephone. At the time of the hearing, Plaintiff was 63 years old, with a college

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by her first name and last initial.

[2] Citations to the underlying administrative record are designated as "R."

degree and prior work experience as a substitute teacher, unit supervisor at a group home, youth counselor, program director, and program coordinator. (R. at 43-47.)

3. The ALJ considered the case <u>de novo</u> and, on October 11, 2018, issued a written decision denying Plaintiff's application for benefits. (R. at 15-23.) On August 12, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1.) Plaintiff then filed the current action on October 10, 2019, challenging the Commissioner's final decision.[3]

4. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 6, 13.) Plaintiff filed a response on July 14, 2020 (Docket No. 14), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Defendant's motion is granted, and Plaintiff's motion is denied.

5. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. <u>See</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir. 1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[3] The ALJ's October 11, 2018, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

6. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

7. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

8. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or

3

>mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 416.920; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

       9.      Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(a)(4); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

      10.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity since his alleged onset date of March 1, 2015. (R. at 17.) At step two, the ALJ found that Plaintiff has the following severe impairments: lumbago, lumbar radiculopathy,

status post lumbar discectomy and fusion surgeries, diabetes mellitus, and venous insufficiency/varicose veins. (Id.)

11. The ALJ then found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments in 20.C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (R. at 18.)

12. Next, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, except that he

> can lift and carry 10 lbs occasionally and frequently; can stand and or walk for 3 hours and sit for 6; requires the freedom to change positions every hour while on task and near his work station; can never climb ladders, ropes and scaffolds; can occasionally climb ramps, stairs, stoop, kneel, crouch, crawl, push pull bilaterally and reach overhead bilaterally; can frequently balance and frequently finger, handle and fell bilaterally, can occasionally operate foot controls with his lower left extremity, cannot work at unprotected heights or with hazardous machines.

(R. at 18.)

13. At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a resident supervisor and resident counselor as generally performed. (R. at 23.) Accordingly, the ALJ found that Plaintiff is not disabled. (Id.)

14. Plaintiff argues that the ALJ's final determination is not supported by substantial evidence for the following reasons: (1) the ALJ failed to consider the amount of time Plaintiff would be absent from work; (2) the ALJ incorrectly found that Plaintiff's lumbar spinal impairment does not meet or medically equal Listing 1.04A; (3) the ALJ failed to properly consider Plaintiff's use of a cane; and (4) the ALJ based her finding that Plaintiff could perform his past relevant work on an erroneous classification by the

5

Vocational Expert. (Docket No. 6-1 at pp. 20-29.) Defendant argues that the ALJ's decision is based on substantial evidence. For the following reasons, Defendant's arguments are convincing.

15.     Plaintiff first argues that his numerous medical appointments mean that he would be absent from any job more than the 2 days per month that the VE testified would be acceptable. During the relevant period between Plaintiff's alleged onset date of March 1, 2015, and the hearing date of September 17, 2018, Plaintiff attended–as Plaintiff's counsel calculates—211 appointments, including routine office visits, imaging, and ER visits. (See Docket No. 6-1 at p. 21.) Plaintiff argues that each of these appointments would constitute a day missed from a job. Given the VE's testimony that missing more than 2 days per month would be work-preclusive, Plaintiff argues that the evidence of so many past appointments proves that he could not hold any job.  Defendant counters that many appointments do not take an entire workday and that many of the 211 appointments were for issues unrelated to Plaintiff's allegedly disabling conditions. (Docket No. 13-1 at p. 10).

16.     Defendant is correct that a single medical appointment on a given day does not necessarily mean that an entire day of work would be missed. See Samantha R. v. Comm'r of Soc. Sec., No. 20-CV-0440-MJR, 2021 WL 2820987, at *5–6 (W.D.N.Y. July 7, 2021) ("this Court has found that the need for a medical visit does not necessarily equate to missing an entire day of work and that the need for multiple medical visits does not compel disabling absenteeism") (citing Robbins v. Saul, No. 18-CV-6592, 2020 WL 1445854, at *4 (W.D.N.Y. Mar. 25, 2020) (rejecting plaintiff's assertion that 45 medical events over a 21-month period prevented her from maintaining regular employment and

collecting cases finding that a claimant can seek treatment during part of a workday or during non-work hours)).

17. Further, no medical provider has opined that Plaintiff would need to miss work a certain number of days per month, nor does the record support such a contention. To the contrary, several doctors opined that Plaintiff could perform work with some limitations without mentioning potential absences from work. (See e.g., Dr. Gregory Chiaramonte, December 2015, R. at 1143; Dr. Daniel Wild, May 2017, R. at 1178; Dr. Christopher Ellingson, July 2018, R. at 1112). The ALJ considered these opinions and gave them some weight. This Court is not persuaded by Plaintiff's reliance on Gavazzi v. Berryhill, because the record in that case contained a medical opinion explicitly stating that the plaintiff would require absences from work and the ALJ failed to properly evaluate that opinion. Gavazzi v. Berryhill, 687 F. App'x 98 (2d Cir. 2017). Here, the record contains no medical opinion linking his conditions to an inability to be present for an entire workday. For all these reasons, this Court finds that the ALJ did not err in failing to include a limitation for Plaintiff's absences.

18. Plaintiff next argues that the ALJ's determination that he did not meet Listing 1.04 for his spine impairment is not supported by substantial evidence.

19. "A plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." Rockwood v. Astrue, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." Loescher v. Berryhill, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation marks and citation omitted). "If a claimant's impairment manifests only

some of those criteria, no matter how severely, such impairment does not qualify." Rockwood, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

20. Listing 1.04(A) requires—in addition to a spinal disorder such as a herniated disc, arthritis, degenerative disc disease, or a vertebral fracture—"[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, *positive straight-leg raising test* (sitting *and* supine)." Scully v. Berryhill, 282 F. Supp. 3d 628, 635 (S.D.N.Y. 2017) (italics added) (citing Listing 1.04(A)).

21. In assessing Listing 1.04(A), courts give substantial deference to the Social Security Administrations Acquiescence Ruling on the topic. See Monsoori v. Comm'r of Soc. Sec., No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019) (citing SSR 15-1(4), 80 Fed. Reg. 57418-02 (2015)). Although ARs are guidance documents, the Supreme Court has held that an agency's interpretation of its own regulations is entitled to substantial deference. See Kisor v. Wilkie, 139 S. Ct. 2400, 2419 (2019) ("[T]he Congress delegating regulatory authority to an agency intends as well to give that agency considerable latitude to construe its ambiguous rules.").

22. In AR 15-1(4), the SSA specifies that to meet Listing 1.04(A), the claimant must establish the simultaneous presence of all the medical criteria in paragraph A. 80 Fed. Reg. at 57420. After these criteria are established, "the claimant must also show that this level of severity continued, or is expected to continue, for a continuous period of at least 12 months." Id. In other words, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's

8

nerve root compression would not rise to the level of severity required by listing 1.04A." Id.

23. An ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," but "the absence of an express rationale for an ALJ's conclusions does not prevent [the Court] from upholding them so long as [it is] able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." Ott v. Kijakazi, No. 3:20-CV-00321 (KAD), 2021 WL 3146246, at *4 (D. Conn. July 26, 2021) (quoting Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112–13 (2d Cir. 2010) (summary order) (internal quotation marks and citation omitted) (finding that "although the ALJ might have been more specific in detailing the reasons for concluding that plaintiff's condition did not satisfy a listed impairment, other portions of the ALJ's detailed decision, along with plaintiff's own testimony, demonstrate that substantial evidence supports this part of the ALJ's determination")).

24. Here, Plaintiff exhibited some symptoms found in listing 1.04(A). He had suffered an injury at work and undergone surgery before the relevant period. These led to L4-L5 decompression, transforaminal laminectomy, and fusion surgery on May 22, 2015, two months after his alleged onset date of March 1, 2015. (R. at 291-93, 316-317.) His back and leg pain progressively improved after that surgery. (R. at 297-98, 302, 467.) Eventually, new back and leg pain led to hardware removal and re-fusion in 2017. (R. at 869-70.) Leading up to the 2017 surgery, he experienced back pain caused by disc extrusion and bilateral foraminal stenosis (R. at 770-71), but after surgery, he reported improvements. (See R. at 964, noting "less and less" back and leg pain, R. at 966,

"steadily improving" and ambulating independently, but see R. at 969, increased pain, but ambulating with steady gait) Testing during the relevant period revealed positive straight leg raise tests on October 24, 2017, and July 12, 2018. (See R. at 938, 1149.) (R. at 1101, which Plaintiff cites as evidence of a third positive straight leg raise, repeats the result of the July 12, 2018, examination.)  Neither of these findings includes a standing straight leg raise. At the medical consultation on October 24, 2017, Plaintiff displayed minimal to moderate paraspinal tenderness, no muscle atrophy, and intact sensory responses in the lower extremities. (R. at 1149.) At the independent medical examination July 12, 2018, Plaintiff had 4+/5 strength in all his lower extremities. (R. at 938.)

      25.    An MRI of Plaintiff's lumbar spine from September 22, 2016, revealed status post lumbar fusion at L4-5 with hardware intact and no evidence of spondylolisthesis, left lateral disc herniation at L2-L3, and mild central canal stenosis at L3-L4. (R. at 1163-64.) An MRI of Plaintiff's lumbar spine on July 10, 2017, after his January 2017 surgery, showed postsurgical fusion L4-S1 with intervertebral disc space placement in good position. (R. at 1170.) An MRI of Plaintiff's lumbar spine from March 12, 2018, revealed some postoperative changes with pedicle screws and rods, intervertebral spacing material was seen at L4-5 and L5-S1, but there was no abnormal spondylolisthesis seen, and a "minimal degree" of perceived retrolisthesis. (R. at 1143.)

      26.    While the record shows intermittent evidence of the criteria required by Listing 1.04, this is not sufficient to meet the listing. Further, although the ALJ's opinion could have contained a more thorough discussion of all the evidence weighing for and against a Listing determination, ultimately, the record supports the ALJ's finding regarding Listing 1.04. Even "[a]n ALJ's unexplained conclusion [at step three] of the analysis may

be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." Ryan v. Astrue, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted). Here, the record contains changing assessments of Plaintiff's back over time. At some appointments he walked with a cane, at some without. He demonstrated spinal issues warranting surgery, but improved after the surgeries. The rest of the ALJ's opinion discussed in depth Plaintiff's activities of daily living and the many medical opinions regarding Plaintiff's functioning, including an independent medical examiner's opinion that Plaintiff could do work involving exerting 5 or 10 pounds of force occasionally, occasionally sitting, standing, or walking. (See R. at 20-22.) The ALJ gave an acceptable reason—the lack of continuous standing straight leg raises—for not finding a Listing impairment. And the rest of the record demonstrates that this conclusion is supported by substantial evidence. This Court therefore does not find error in the ALJ's determination that Plaintiff did not meet Listing 1.04 (A).

27.   Plaintiff next argues that the ALJ failed to properly consider Plaintiff's use of a cane. Plaintiff cites SSR 96-9p regarding hand-held assistive devices: "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed." SSR 96-9p. But Plaintiff's argument fails according to this standard, because the record lacks any such documentation. Instead, it contains intermittent observations that Plaintiff ambulated with a cane. (See, e.g., R at 301-03, 325, 425, 467-68, 954-55, 958, 1100, 1123, 1234.) Plaintiff's neurosurgeon, Dr. Gregory Castiglia, noted on October 12, 2015, and November 23, 2015, that Plaintiff was "reliant on a cane. (R. at 300, 303.) The record also contains considerable evidence of Plaintiff ambulating without a cane. On January 7,

2015, Dr. Chiaramonte, examining Plaintiff for a workers' compensation claim, noted that Plaintiff ambulated with a normal gait and did not mention a cane. (R. at 308.) Dr. Castiglia did not mention Plaintiff's use of a cane on June 10, 2015. (R. at 689.) Although Plaintiff ambulated with a cane following further back surgery on January 17, 2017 (R. at 821, 923, 937), on July 10, 2017, he reported that he was steadily improving and Dr. Castiglia. noted that he ambulated independently with a steady gait (R. at 967). On July 19, 2018, Plaintiff had diminished strength but ambulated independently (R. at 973-74.)

28.   At the hearing, Plaintiff stated that he used a cane and that a doctor had prescribed it. (R. at 51.) However, at the hearing also Plaintiff stated that had not used a cane to access the hearing, thinking that there would be an elevator, but that the stairs "weren't that bad." (R. at 52.) Plaintiff's briefing does not point to record evidence of a prescription or to a description of the "circumstances for which [the cane] is needed." SSR 96-9p. There is simply no medical documentation of Plaintiff's medical need for a cane or a medical specification of when he needed it, and the ALJ did not err in not finding that Plaintiff required a cane to ambulate.

29.   Finally, Plaintiff argues that the VE's testimony was not substantial evidence supporting the ALJ's finding that Plaintiff can perform his past relevant work. Plaintiff had numerous past jobs working with children. His initial injury stemmed from his attempt to restrain a violent child at Child and Family Services. At the hearing, the VE identified two of his numerous past jobs as "residence counselor" and "residence supervisor," both of which were classified as sedentary. (R. at 66.) Plaintiff's attorney inquired further into these jobs, stating, "I guess we can't argue with the classifications." (R. at 70.) Instead, Plaintiff's attorney identified differences between the sedentary level at which these jobs

are generally performed, and the fact that Plaintiff had restrained unruly youths as part of these jobs. (Id.) The VE then clarified that Plaintiff had actually performed these jobs at the medium to heavy exertion level. (R. at 72-73.) Plaintiff's attorney also raised the issue of whether these job classifications were outdated, given that Plaintiff's jobs appeared to have been residential settings with mentally disturbed or incarcerated youth. (R. at 76.) The VE testified that, while the DOT was outdated in some respects, she believed that it was accurate in regard to these two jobs. (R. at 76.)

30. Plaintiff objects that the jobs the VE named do not match the duties he actually performed in his past work, particularly his need to restrain physically aggressive youths. (Docket No. 6-1 at p. 29.) He appears to make two arguments: first, that the VE's labeling of his past work as "residence supervisor" or "residence counselor" was erroneous because the descriptions in the DOT do not match the work he actually did, and second, that the ALJ wrongly found that he can perform his past relevant work as it is generally performed.

31. Plaintiff's arguments are unavailing for several reasons. As an initial matter, the DOT describes Residence Supervisor as a job performed in boarding schools, college fraternity houses, care and treatment institutions, children's homes, or similar establishments. (DICOT 187.167-186 (G.P.O.), 1991 WL 671408. Plaintiff does not persuasively argue why his prior work settings do not qualify as either a "children's home," a "treatment institution" or a "similar establishment." (See R. at 41, "we were running a program for children that has some serious disability and mental health in a residential facility setting;" R. at 42, "it's like a group home setting.")

32. Further, Plaintiff's argument that his job involved restraining youth, and therefore does not exactly match the two jobs the VE discussed, does not demonstrate any error, but in fact supports the VE's assessment that he performed the job at a much higher level than it is generally performed. Descriptions of claimant's jobs often differ from the DOT without there being reversible error. "The Dictionary ... is used to evaluate jobs as they are generally performed." Paulino v. Colvin, 13–CV–3718, 2014 WL 2120544, at *19 (S.D.N.Y. May 13, 2014) (Peck, Mag. J.) (internal quotation marks omitted) (citing Petrie v. Astrue, 412 Fed. Appx. 401, 409 (2d Cir. 2011)). The Second Circuit has noted "[m]any specific jobs differ from those jobs as they are generally performed, and [an individual] may identify those unique aspects without contradicting the Dictionary." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003). Deviations from the Dictionary's description of a job as generally performed when describing a specific previous job "do not actually conflict with the Dictionary." Id. (internal quotation marks omitted). Thus, there is not necessarily a conflict between Plaintiff's descriptions of his former work and the Dictionary definitions.

33. More importantly, the ALJ properly performed her role of assessing the VE's testimony, along with the other evidence before her, in adopting the VE's classification of Plaintiff's former work. An ALJ can reasonably credit a VE's testimony where such testimony is given on the basis of the expert's professional experience and clinical judgment, and where it is not undermined by any evidence in the record. McIntyre v. Colvin, 758 F.3d 146, 152 (2d Cir. 2014). This issue arises more frequently at step 5, regarding the number of jobs available, but it appears equally true as to the VE's

categorization of a plaintiff's past work according to the Dictionary of Occupational Titles at step 4.

34. In general, it is the ALJ's job to assess and weigh the evidence and to decide how much credit to give to an expert's opinion. Biestek v. Berryhill, 139 S. Ct. 1148, 1156–57, 203 L. Ed. 2d 504 (2019). Here, Plaintiff's attorney stipulated to the VE's qualifications and expertise and was given a chance to question the VE regarding the basis of her classification. The VE explained why she found the classifications to be correct. The ALJ ascertained the extent to which the VE's classification comported with the DOT, and then adopted the VE's classification. This Court finds that substantial evidence supports ALJ's assessment of the VE's testimony. For all these reasons, this court declines to overturn the ALJ's adoption of the VE's classification of his past work.

35. Insofar as Plaintiff argues that the ALJ erred in finding that he could perform his past work because he could no longer restrain youths, that argument, too, is unavailing. "[At] the fourth stage of the [SSA] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." Jasinski, 341 F.3d at 185 (emphasis added) (citation omitted). "[An] ALJ's finding that Plaintiff could perform his past relevant work ... as generally performed is sufficient to negate a finding of disability at step four[;] it is not necessary for the Court to determine whether Plaintiff could perform her past relevant work *as actually performed*." Grogg v. Comm'r of Soc. Sec., 11–CV–1381, 2014 WL 1312325, at *13 (N.D.N.Y. Mar. 31, 2014) (citations omitted) (emphasis added).

36. Here, the VE testified, and the ALJ accepted that testimony, that Plaintiff was capable of performing her past relevant work as a Residence Supervisor or

Residence Counselor *as generally performed*. (R. at 17.) The fact that Plaintiff may be unable to perform his *specific* past work because that job required restraining physically aggressive youths does not mean that Plaintiff cannot perform the jobs of Residence Supervisor or Residence Counselor as they are generally performed. See Albano v. Colvin, 99 F. Supp. 3d 355, 369 (E.D.N.Y. 2015). And the ALJ needed only to determine Plaintiff could perform his past work generally to find that he was not disabled. Id. This Court finds no error in the ALJ's determination that Plaintiff could perform the duties of Residence Supervisor and Residence Counselor as generally performed. (R. at 17.)

37.   Having reviewed the ALJ's decision in light of Plaintiff's arguments, this Court finds no error in the ALJ's determination. The decision contains an adequate discussion of the medical evidence supporting the ALJ's determination that Plaintiff was not disabled, and Plaintiff's aforementioned contentions are unavailing. Plaintiff's Motion for Judgment on the Pleadings is therefore denied, and Defendant's motion seeking the same relief is granted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 6) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 13) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   September 23, 2021
         Buffalo, New York

                                                    s/William M. Skretny
                                                  WILLIAM M. SKRETNY
                                                  United States District Judge